**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRU DRAGANOV,<br><br>    Plaintiff,<br><br>  vs.<br><br>STANDARD BIOTOOLS, INC.,<br>CARLOS PAYA, MICHAEL EGHOLM,<br>ELI CASDIN, LAURA M. CLAGUE,<br>FENEL ELOI, MARTIN D. MADAUS,<br>and FRANK WITNEY,<br><br>    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

   Plaintiff, Alexandru Draganov ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### <u>SUMMARY OF THE ACTION</u>

   1.  Plaintiff brings this stockholder action against Standard BioTools, Inc. ("Standard BioTools" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge with SomaLogic, Inc. ("SomaLogic"), through merger vehicle Martis Merger Sub, Inc., a wholly owned subsidiary of Standard BioTools ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 4, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of SomaLogic common stock will be converted into the right to receive 1.11 shares of newly issued Standard BioTools common stock.  Post-close, current Standard BioTools stockholders are expected to own only approximately 43% of the Company.

3.      Thereafter, on November 14, 2023, the Company filed a Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into an agreement which will provide no consideration to any Company stockholder whatsoever, and will significantly dilute the shares held by Plaintiff and other Company stockholders.

5.      The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for

management; (b) the financial projections for Standard BioTools and SomaLogic, provided by Standard BioTools management to the Board and the Board's financial advisor Centerview Partners LLC ("Centerview") or SomaLogic's financial advisor Perella Weinberg Partners LP ("PWP"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview and/or PWP, if any, provided to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7.     Plaintiff is a citizen of Iowa and, at all times relevant hereto, has been a Standard BioTools stockholder.

8.     Defendant Standard BioTools, together with its subsidiaries, creates, manufactures, and markets instruments, consumables, reagents, and software for researchers and clinical laboratories worldwide.  The Company is incorporated in Delaware and has its principal place of business at 2 Tower Place, Suite 2000, South San Francisco, CA 94080.  Shares of Standard BioTools common stock are traded on the NASDAQ Stock Exchange under the symbol "LAB".

9.     Defendant Carlos Paya ("Paya") has been a Director of the Company at all relevant times.  In addition, Defendant Greenwood serves as the Chairman of the Company Board.

10.     Defendant Michael Egholm ("Egholm") has been a director of the Company at all relevant times.   In addition, Defendant Egholm serves as the Company's Chief Executive Officer ("CEO") and President.

11.     Defendant Eli Casdin ("Casdin") has been a director of the Company at all relevant times.

12.     Defendant Laura M. Clague ("Clague") has been a director of the Company at all relevant times.

13.     Defendant Fenel Eloi ("Eloi") has been a director of the Company at all relevant times.

14.     Defendant Martin D. Madaus ("Madaus") has been a director of the Company at all relevant times.

15.     Defendant Frank Witney ("Witney") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party SomaLogic operates as a protein biomarker discovery and clinical diagnostics company in the United States.  SomaLogic is incorporated in Delaware and has its principal place of business at 2945 Wilderness Place, Boulder, CO 80301.  Shares of SomaLogic common stock are traded on the NASDAQ Stock Exchange under the symbol "SLGC".

18.     Non-Party Merger Sub is a wholly owned subsidiary of the Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.     Standard BioTools, together with its subsidiaries, creates, manufactures, and markets instruments, consumables, reagents, and software for researchers and clinical laboratories worldwide.

23.     The Company offers analytical systems, such as Helios, a CyTOF system, as well as Hyperion imaging systems, Hyperion tissue imagers, and flow conductors; and assays and reagents, including Maxpar reagents, Maxpar direct immune profiling assays, Maxpar on demand reagents, and IMC panel kits for immuno-oncology.

24.     The Company also provides preparatory instruments, such as Juno systems; and analytical instruments comprising Biomark HD system and EP1 system.

25.     Moreover, Standard BioTools offers integrated fluidic circuits (IFCs), such as library preparation IFCs, Juno genotyping IFC, dynamic array IFCs, digital array IFCs, and Flex Six IFC; and assays and reagents, including Advanta RNA-Seq NGS library prep kits, Advanta Dx SARS-CoV-2 RT-PCR assays, Advanta Dx COVID-19 EASE assays, delta gene and SNP type

assays, access array target-specific primers and targeted sequencing prep primers, and targeted DNA Seq library assays.

26.     Further, the Company offers single cell microfluidics that comprise C1 systems; preparatory analytical instruments, which include C1 IFCs; and software solutions. It sells its products to academic research institutions; translational research and medicine centers; cancer centers; clinical research laboratories; biopharmaceutical, biotechnology, and plant and animal research companies; and contract research organizations.

27.     The Company's last performance press release prior to the Merger Announcement, revealed performance results indicated strong financial progress.  Specifically, the August 8, 2023 press release announcing the Company's Q2 2023 financial results noted such milestones as an increase in total revenue of 47% in the second quarter of 2023 and 17% in the first half of 2023.

28.     Speaking on the results, Defendant and CEO Egholm stated, "I am pleased to report our second quarter results and the visible improvement to many of our key performance metrics, especially in light of an uncertain macroeconomic environment."

29.     Egholm continued, noting the Company's likelihood for future success, stating, "Continued success will come from building out our operational systems that deliver a portfolio of high value, high margin tools and solutions to researchers at a profit, while attracting personnel that fully embrace a lean culture and can execute at the highest level. In the last year we have completely transformed our senior management team to this standard and are now seeing in this quarter the early signs and benefit of having done so."

30.     The sustained clinical results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Standard BioTools.

31.    Despite this upward trajectory, the Individual Defendants have caused Standard BioTools to enter into the Proposed Transaction without providing requisite information to Standard BioTools stockholders such as Plaintiff.

**_The Flawed Sales Process_**

32.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.    Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with no consideration given.

34.    The Registration Statement fails to provide adequate disclosure as to why Defendant Casdin, who sits on both sides of the Transaction as a member of both he Company and SomaLogic Boards, and who is a significant stockholder in each, was allowed to serve on the special advisory committee of the Standard BioTools Board that was tasked with running the sales process.

35.    The Registration Statement also fails to indicate what the specific powers of the special advisory committee of the Standard BioTools Board were, and if it had the specific power to veto potential strategic alternatives.

36.    Moreover, the Registration Statement is silent as to the specific nature of the confidentiality agreement entered into between the Company and SomaLogic, the specific ways, if any, this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so, in all specific manners, including

all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

37.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

### The Proposed Transaction

38.    On May 23, 2023, Standard BioTools issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**SOUTH SAN FRANCISCO, Calif. and BOULDER, Colo., Oct. 04, 2023 (GLOBE NEWSWIRE) --** Standard BioTools Inc. (Nasdaq: LAB), driven by a bold purpose – Unleashing tools to accelerate breakthroughs in human health – and SomaLogic (Nasdaq: SLGC), a leader in data-driven proteomics technology, today announced that they have entered into a definitive agreement to combine in an all-stock merger.

The combined company, with a pro-forma equity value of over $1 billion based on Standard BioTools' closing share price on October 3, 2023, will be a leading provider of differentiated multi-omics tools for research. With products distributed in approximately 50 countries and a global infrastructure, the combined company would become a leading platform of multi-omic technologies with over $180 million of pro-forma combined revenue for the full year 2023 and a robust balance sheet with over $500 million in estimated cash and cash equivalents at close.2
Under the terms of the agreement, which was unanimously approved by the participating members of the boards of directors of both companies, SomaLogic shareholders will receive 1.11 shares of Standard BioTools common stock for each share of SomaLogic common stock owned. Upon the close of the transaction, Standard BioTools shareholders will own approximately 43% of the combined company, and SomaLogic shareholders will own approximately 57% of the combined company on a fully diluted basis.

Michael Egholm, PhD, President and Chief Executive Officer of Standard BioTools™, said, "SomaLogic's world-class proteomic tools fuel research discoveries with unmatched reliability, and fit well with our life science tools platform. The value of SomaLogic's technology and expertise is substantiated by elite relationships in the pharmaceutical research space, as well as a developing genomics-proteomics commercial partnership with Illumina. This transaction activates our strategy to unlock value in the highly fragmented life science tools space. It positions Standard BioTools with an increasingly scalable platform and

powerful balance sheet, which will be underpinned by unparalleled operating discipline and a shared mission to accelerate breakthroughs in human health. This is an exciting step forward for both of our companies and we look forward to the significant value creation opportunities ahead."

SomaLogic interim Chief Executive Officer Adam Taich, added, "This transaction brings together two organizations with mutual visions and values to create a multi-omics leader with the financial strength to self-fund growth investments and accelerate research insights. We look forward to partnering with the team at Standard BioTools to better serve the needs of translational and clinical pharmaceutical research, while delivering significant value for our shareholders."

**Strategic and Financial Benefits**

- Creates a multi-omic technology leader, targeting large, high growth markets with a diverse portfolio of life science tools that power industry-leading throughput and data quality.

- Expands commercial reach and maximizes cross-selling opportunities through complementary offerings and end markets. Standard BioTools' strong presence in academic research settings ideally complements SomaLogic's prestigious biopharmaceutical research footprint.

- Expedites scalability creating an accelerated path to combined company profitability. The transaction is expected to generate $80 million in annual cost synergies by 2026.

- Produces a formidable capital structure with over $500 million in cash and cash equivalents expected at close to self-fund future growth initiatives.

- Opens the door to meaningful value creation through a proven model that couples deep large-enterprise life sciences expertise and operating discipline with ample capital.

**Leadership**

The combined company will be led by an experienced Board of Directors and leadership team that leverages the deep life sciences expertise within both organizations.

Upon close, the combined company's Board will consist of seven directors, three of whom will be designated by Standard BioTools: Michael Egholm, Fenel Eloi and Frank Witney, and three of whom will be designated by SomaLogic: Tom Carey, who will serve as Chairman, Troy Cox and Kathy Hibbs. Eli Casdin will also continue to serve on the combined company's Board.

COMPLAINT

Upon close, Michael Egholm will serve as Chief Executive Officer, Jeff Black will serve as Chief Financial Officer and Alex Kim will serve as Chief Operating Officer. Adam Taich will serve as the combined company's Chief Strategy Officer, and Shane Bowen, Chief Research and Development Officer of SomaLogic, will serve as Chief Technology Officer.

The combined company will operate under the Standard BioTools name with facilities in California, Colorado, Massachusetts, Canada and Singapore.

**Timing and Approvals**

The transaction is expected to close in the first quarter of 2024, subject to approval by both companies' stockholders, expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and satisfaction of other customary closing conditions.

Stockholders representing approximately 16% of Standard BioTools common stock and approximately 1% of SomaLogic common stock, including the directors and executive officers of each company and affiliated investment funds, have entered into voting agreements in support of the transaction.

**Full 2023 Year Outlook**

In connection with today's announcement, both companies provided 2023 full year revenue guidance. Standard BioTools expects full year 2023 revenue of $100 - $105 million, an increase from its prior guidance, and SomaLogic reaffirmed full year 2023 revenue guidance of $80 - $84 million.

**Conference Call and Webcast**

Standard BioTools and SomaLogic will host a joint conference call and webcast today at 8:30 a.m. ET to discuss the merger. The conference call can be accessed by dialing (800) 225-9448 within the U.S. and (203) 518-9708 for all non-U.S. locations. The confirmation code is 81365. Participants should dial in 10 minutes prior to the scheduled start time.

A live webcast of the conference call will be accessible here: https://event.on24.com/wcc/r/4372311/445DB37AF6BE5227E3E3C92B52226B0F. The webcast link and associated presentation materials will be available on the investor relations section of each company's website: investors.standardbio.com and investors.somalogic.com.

**Advisors**

Centerview Partners LLC is serving as financial advisor to Standard BioTools, and Mintz is serving as its legal counsel. Perella Weinberg Partners LP and TD Cowen

COMPLAINT

are serving as financial advisors to SomaLogic, with Perella Weinberg Partners LP as lead. Fenwick is serving as its legal counsel.

***Potential Conflicts of Interest***

39.     The breakdown of the benefits of the deal indicate that Standard BioTools insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Standard BioTools.

40.     For example, the Registration Statement fails to provide adequate information regarding Defendant Casdin and his specific impact on the sales process.  Notably, Defendant Casdin sits on both sides of the Transaction, holding directorship positions on the Boards of both the Company and SomaLogic.  Moreover, through Defendant's Casdin's controlled entity, Casdin Capital, LLC, Casdin owns 12.3% of SomaLogic and is the Controlling stockholder of the Company, owning 50.0002% of Standard BioTools preferred stock and 33.15% of Standard BioTools common stock.

41.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of Standard BioTools, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

43.    On November 8, 2023, the Standard BioTools Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

<u>*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*</u>

44.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   Adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with no consideration given;

b.   Adequate disclosure as to why Defendant Casdin, who sits on both sides of the Transaction as a member of both the Company and SomaLogic Boards, and who is a significant stockholder in each, was allowed to serve on the special advisory committee of the Standard BioTools Board that was tasked with running the sales process;

c.   Adequate disclosure regarding what the specific powers of the special advisory committee of the Standard BioTools Board were, and if it had the specific power to veto potential strategic alternatives;

d.   Adequate disclosure as to the specific effects Defendant Casdin had on the sales process leading to the Proposed Transaction;

e.  Whether the confidentiality agreements entered into by the Company with SomaLogic differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties, and if so the specific manner in which they differed;

f.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including SomaLogic, would fall away; and

g.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Standard BioTools Financial Projections*

45.     The Registration Statement fails to provide material information concerning financial projections for Standard BioTools provided by Standard BioTools management to the Board, Centerview, and PWP and relied upon by Centerview and PWP in their analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

46.     Notably the Registration Statement reveals that as part of its analyses, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Standard BioTools, including certain financial forecasts, analyses and projections relating to Standard BioTools prepared by management of Standard BioTools and furnished to Centerview by Standard BioTools for purposes of Centerview's

analysis."   Additionally, the Registration Statement reveals that as part of its analyses, PWP, reviewed, "Reviewed certain internal financial statements, analyses and forecasts (the "Standard BioTools Forecasts") and other internal financial information and operating data relating to the business of Standard BioTools, in each case, prepared and approved for PWP's use by SomaLogic management."

47.     The Registration Statement should have, but fails to provide, certain information in the projections that Standard BioTools management provided to the Board, Centerview, and PWP. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

48.     With regards to the Standard BioTools Management Projections, the Registration Statement fails to disclose:

a.   Adjusted EBTIDA, including the underlying inputs, metrics, and adjustments, including specifically: earnings, interest, taxes, depreciation and amortization, stock-based compensation expense, restructuring expense, transaction expenses, and the "other one-time expenses" utilized; and

b.   Unlevered Free Cash Flow, including the underlying inputs, metrics, and adjustments, including specifically: earnings, interest and taxes, tax expense, depreciation, capital expenditures, stock-based compensation expense, less changes in working capital and the specific "other adjustments to exclude certain non-cash items".

COMPLAINT

49.    The Registration Statement also fails to provide a reconciliation of all Non-GAAP metrics to GAAP.

50.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51.    Without accurate projection data for Standard BioTools being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Centerview and/or PWP's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning SomaLogic's Financial Projections*

52.    The Registration Statement fails to provide material information concerning financial projections for SomaLogic provided by SomaLogic and Standard BioTools management to the Board, Centerview, and PWP and relied upon by Centerview and PWP in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

53.    Notably the Registration Statement reveals that as part of its analyses, Centerview reviewed, "certain financial forecasts, analyses and projections relating to SomaLogic prepared by management of SomaLogic with adjustments made by management of Standard BioTools and furnished to Centerview by Standard BioTools for purposes of Centerview's analysis." Additionally, the Registration Statement reveals that as part of its analyses, PWP, reviewed,

"certain internal financial statements, analyses and forecasts (the "SomaLogic Forecasts") and other internal financial information and operating data relating to the business of SomaLogic, in each case, prepared and approved for PWP's use by SomaLogic management."

54.     The Registration Statement should have, but fails to provide, certain information in the projections that SomaLogic and Standard BioTools management provided to the Board, Centerview, and PWP.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

55.     With regards to the SomaLogic Management Projections, the Registration Statement fails to disclose:

        a.   EBIT, including the underlying inputs, metrics, and adjustments, including specifically: operating expenses; and

        b.   Unlevered Free Cash Flow, including the underlying inputs, metrics, and adjustments, including specifically: tax expense, depreciation, capital expenditures, changes in working capital and the specific "other adjustments to exclude certain non-cash items".

56.     With regards to the SomaLogic Management Projections Adjusted by Standard BioTools Management, the Registration Statement fails to disclose:

        a.   Adjusted EBTIDA, including the underlying inputs, metrics, and adjustments, including specifically: earnings, interest, taxes, depreciation and amortization,

- 16 -

COMPLAINT

stock-based compensation expense, restructuring expense, transaction expenses, and the "other one-time expenses" utilized; and

b. Unlevered Free Cash Flow, including the underlying inputs, metrics, and adjustments, including specifically: earnings, interest and taxes, tax expense, depreciation, capital expenditures, stock-based compensation expense, less changes in working capital and the specific "other adjustments to exclude certain non-cash items".

57.     The Registration Statement also fails to provide a reconciliation of all Non-GAAP metrics to GAAP.

58.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

59.     Without accurate projection data for SomaLogic being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Pro-Forma Company's value, the accuracy of the Centerview and/or PWP's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

60.     In the Registration Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

61.    With respect to the *Standalone Standard BioTools Financial Analysis - Selected Comparable Public Companies Analysis*, the Registration fails to disclose:

    a.   The specific metrics observed for each comparable company;

    b.   The specific inputs and assumptions used to determine the utilized EV / revenue multiple reference range of 1.5x to 3.5x;

    c.   Standard BioTools' net cash and cash equivalents as of August 31, 2023; and

    d.   The number of fully-diluted shares of Standard BioTools Common Stock as of September 27, 2023, including Standard BioTools' Series B preferred stock on an as-converted basis.

62.    With respect to the *Standalone Standard BioTools Financial Analysis – Discounted Cash Flow Analysis*, the Registration fails to disclose:

    a.   The terminal value for Standard BioTools calculated;

    b.   The specific inputs and assumptions used to determine the utilized exit-based EV / adjusted EBITDA multiple of 18.0x to 22.0x as applied to adjusted EBITDA (excluding stock-based compensation) of Standard BioTools for the year ending December 31, 2033;

    c.   The specific inputs and assumptions used to determine the utilized discount rates ranging from 15.0% to 18.0%;

    d.   Standard BioTool's weighted average cost of capital utilized and the specific inputs and assumptions used to determine the same;

    e.   Standard BioTools' net cash and cash equivalents as of August 31, 2023; and

f.  The number of fully-diluted shares of Standard BioTools Common Stock as of September 27, 2023, including Standard BioTools' Series B preferred stock on an as-converted basis.

63.  With respect to the *Standalone Company Financial Analysis - Selected Comparable Public Companies Analysis*, the Registration fails to disclose:

a.  The specific metrics observed for each comparable company;

b.  The specific inputs and assumptions used to determine the utilized EV / revenue multiple reference range of 0.0x to 2.0x;

c.  SomaLogic's net cash and cash equivalents as of August 31, 2023; and

d.  The number of fully-diluted shares of SomaLogic's Common Stock as of September 27, 2023.

64.  With respect to the *Standalone Company Financial Analysis – Discounted Cash Flow Analysis*, the Registration fails to disclose:

a.  The terminal value for SomaLogic calculated;

b.  The specific inputs and assumptions used to determine the utilized exit-based EV / adjusted EBITDA multiple of 18.0x to 22.0x as applied to adjusted EBITDA (excluding stock-based compensation) of SomaLogic for the year ending December 31, 2033;

c.  The specific inputs and assumptions used to determine the utilized discount rates ranging from 15.0% to 18.0%;

d.  SomaLogic's weighted average cost of capital utilized and the specific inputs and assumptions used to determine the same;

e.  SomaLogic's net cash and cash equivalents as of August 31, 2023; and

f.  The number of fully-diluted shares of SomaLogic's Common Stock as of September 27, 2023.

65.     With respect to the *Precedent Premia Paid Analysis*, the Registration fails to disclose:

a.  The specific transactions analyzed, and the metrics observed for each.

66.     With respect to the *Analysis of Selected Initial Public Offering Transactions*, the Registration fails to disclose:

a.  The specific utilized reference range of implied total enterprise values, and the specific reasoning for choosing the 25th and 75th percentile as the said range.

67.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

68.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Standard BioTool's stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by PWP*

69.     In the Registration Statement, PWP describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

70. With respect to the *Selected Publicly-Traded Companies Analysis*, the Registration fails to disclose:

      a. The specific inputs and assumptions used to determine the utilized range of multiples of 1.0x to 2.5x to EV / 2023E Revenue for SomaLogic;

      b. The specific inputs and assumptions used to determine the utilized range of multiples of 0.5x to 2.0x to EV / 2024E Revenue for SomaLogic using the SomaLogic Forecasts;

      c. The specific inputs and assumptions used to determine the utilized range of multiples of 2.5x to 6.5x to EV / 2023E Revenue for Standard BioTools using the Standard BioTools Forecasts; and

      d. The specific inputs and assumptions used to determine the utilized range of multiples of 2.0x to 6.0x to EV/ 2024E Revenue for Standard BioTools using the Standard BioTools Forecasts.

71. With respect to the *Discounted Cash Flow Analysis*, the Registration fails to disclose:

      a. The specific inputs and assumptions used to determine the utilized discount rates ranging from 12.5% to 13.5% for Standard BioTools;

      b. Standard BioTools' weighted average cost of capital utilized and the specific inputs and assumptions used to determine the same;

      c. The specific inputs and assumptions used to determine the utilized discount rates ranging from 14.75% to 18.25% for SomaLogic;

    d.   SomaLogic's weighted average cost of capital utilized and the specific inputs and assumptions used to determine the same;

    e.   The terminal values for Standard BioTools calculated;

    f.   The terminal values for SomaLogic calculated;

    g.   The specific inputs and assumptions used to determine the utilized perpetuity growth rates ranging from 2.5% to 3.5% for Standard BioTools;

    h.   The specific inputs and assumptions used to determine the utilized perpetuity growth rates ranging from 4.0% to 5.0% for SomaLogic;

    i.   The specific cash and other investments, debt, net non-operating liabilities and convertible preferred stock amounts for Standard BioTools utilized; and

    j.   The specific cash and other investments, debt, net non-operating liabilities and convertible preferred stock amounts for SomaLogic utilized.

72.    With respect to the *Research Analyst Price Targets*, the Registration fails to disclose:

    a.   The specific price targets utilized;

    b.   The identity of the firms that generated the utilized price targets;

    c.   The specific inputs and assumptions used to determine the utilized discount rate of 16.50% for SomaLogic; and

    d.   The specific inputs and assumptions used to determine the utilized discount rate of 13.00% for Standard BioTools.

73.    With respect to the *Illustrative Value Analysis*, the Registration fails to disclose

    a.   The specific inputs and assumptions used to determine the utilized discount rate of 13.00%;

b.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate of 3.50%; and

c.  All specific inputs and assumptions used to generate the sensitivity cases utilized.

74.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

75.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Standard BioTool's stockholder.   As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

76.    Plaintiff repeats all previous allegations as if set forth in full herein.

77.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

78.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

79.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

80.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

81.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

82.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

83.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

COMPLAINT

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

84.     Plaintiff repeats all previous allegations as if set forth in full herein.

85.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

86.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

87.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Standard BioTools' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being

concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

88.     The Individual Defendants acted as controlling persons of Standard BioTools within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Standard BioTools to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Standard BioTools and all of its employees.  As alleged above, Standard BioTools is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

3

4

Dated: November 28, 2023                    **BRODSKY SMITH**

5

By: _Evan J. Smith_

6
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

7

8

9

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT